SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| DAVID G. | ) | Arizona Supreme Court |
| | ) | No. CV-03-0169-PR |
| Petitioner, | ) | |
| | ) | Court of Appeals |
| v. | ) | Division Two |
| | ) | No. 2 CA-SA 2003-0030 |
| THE HONORABLE MICHAEL POLLARD OF | ) | |
| THE TUCSON CITY COURT, in and | ) | Pima County Superior |
| for the COUNTY OF PIMA, STATE OF | ) | Court |
| ARIZONA, | ) | No.  CR-20013589 |
| | ) | |
| Respondent, | ) | Tucson City Court |
| | ) | Nos. TR 02001686 |
| STATE OF ARIZONA, ex rel., | ) | TR 02002072 |
| MICHAEL D. HOUSE, Attorney for | ) | TR 02003099 |
| the City of Tucson, | ) | |
| | ) | |
| Real Party in Interest. | ) | **O P I N I O N** |
| | ) | |
| _____ | ) | |

Petition for Review from
Court of Appeals, Division Two,
No. 2 CA-SA 2003-0030

Special Action Review from
Tucson City Court
Nos. TR 02001686, TR 02002072, TR 02003099

**REMANDED TO TUCSON CITY COURT**

---

MICHAEL D. HOUSE, Tucson City Attorney                          Tucson
     By:  William F. Mills
Attorneys for Real Party in Interest

City of Tucson Public Defender's Office                         Tucson
     By:  Russell E. Hughes, Assistant City Public Defender
Attorneys for Petitioner

---

**R Y A N**, Justice

¶1        This case concerns whether a city court judge who has been authorized to adjudicate criminal misdemeanor traffic citations issued to a juvenile can apply the Arizona Rules of Criminal Procedure and order a jury trial.  We hold that he cannot.

**I.**

¶2        Petitioner, fourteen-year-old David G., was involved in a high-speed chase through the City of Tucson with various Tucson Police officers and a Tucson air unit.  David was ultimately apprehended and cited for numerous civil traffic violations.  He was also cited for two Title 28 criminal offenses: 1) leaving the scene of an accident in violation of Arizona Revised Statutes ("A.R.S.") section 28-664(A)(1) (1998), a class 3 misdemeanor; and 2) reckless driving in violation of A.R.S. § 28-693(A) (1998), a class 2 misdemeanor.

¶3        At David's arraignment, the State, unaware that David was a juvenile, advised the Tucson City Court judge that it would seek jail time for the two criminal offenses. Consequently, the judge appointed a public defender to represent David[1] and set the matter for a pretrial conference.  After

---

[1]    *See Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972) (holding "that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at

realizing that David was a juvenile, the State withdrew its request for jail time.

**¶4**        David filed a motion to dismiss the criminal offenses, challenging the jurisdiction of the Tucson City Court to hear juvenile cases.  The court denied the motion to dismiss.  David filed a second motion to dismiss alleging a violation of due process because the city court judge failed to comply with the Arizona Rules of Juvenile Procedure.  The court denied David's motion, ruling in part, "[t]hat the Rules of Criminal Procedure in so far as they do not conflict with the Rules of Juvenile Procedure guarantee the protection of due process rights."  The court subsequently set the matter for a jury trial. *See Urs v. Maricopa County Attorney's Office*, 201 Ariz. 71, 72, ¶ 2, 31 P.3d 845, 846 (App. 2001) (holding that reckless driving is a jury-eligible offense under Article 2, Sections 23 and 24, of the Arizona Constitution).

**¶5**        David then filed a petition for special action with the Arizona Court of Appeals.  The court declined jurisdiction, with Judge Flórez voting to accept jurisdiction. David filed a

---

his trial"); *Neilson v. Superior Court*, 159 Ariz. 395, 396, 767 P.2d 1185, 1186 (App. 1988) (finding that a defendant has a constitutional right to be represented by counsel if the defendant's "liberty is in jeopardy" (quoting *Argersinger*, 407 U.S. at 40)).

petition for review by this court.  He did not request a stay.[2]

**¶6**         Although David's case may have concluded by now, making the issue in this case moot with respect to David, the issue is one that is capable of repetition yet evades review. *See In re Leon G.*, 204 Ariz. 15, 18 n.1, ¶ 2, 59 P.3d 779, 782 n.1 (2002) ("Generally, this court will not examine waived or moot questions.  An exception exists, however, for issues that are of great public importance or likely to reoccur." (citing *Barrio v. San Manuel Div. Hosp.,* 143 Ariz. 101, 104, 692 P.2d 280, 283 (1984) and *Corbin v. Rodgers,* 53 Ariz. 35, 39, 85 P.2d 59, 61 (1938))).  Concluding that clarification is necessary as to the appropriate procedures to be applied in city court for cases involving minors charged with misdemeanor traffic offenses, we granted review.[3]  We have jurisdiction under Article 6, Section 5(3), of the Arizona Constitution and A.R.S. § 12-120.24 (2003).

## II.

**¶7**         A juvenile is an individual under the age of eighteen

---

[2]    David later advised this court that he had a pretrial conference pending in this matter.  It is unclear from the record whether the order setting a jury trial remained in effect.  Neither party has subsequently advised us whether this matter has been resolved, either by trial, change of plea, or dismissal.

[3]    Two other cases involving juveniles who had raised the same issue were consolidated for the purpose of deciding the issue raised in David's second motion to dismiss.

years.  A.R.S. § 8-201(6) (Supp. 2003).  An act committed by a juvenile is considered delinquent if that same act "committed by an adult would be a criminal offense or a petty offense." A.R.S. § 8-201(10).[4]  If committed by an adult, the charges of reckless driving and leaving the scene of an accident would constitute criminal acts under Title 28.  A.R.S. §§ 28-664(B), -693(B).  Thus, because David is a juvenile, his offenses were delinquent acts.

**A.**

¶8    The juvenile court has original jurisdiction over all delinquency proceedings, A.R.S. § 8-202(A) (Supp. 2003), and all offenses listed in A.R.S. § 8-323(B) committed by a person under eighteen years of age.  A.R.S. § 8-202(E).  The offenses listed in A.R.S. § 8-323(B) include any provision of Title 28 that is "not declared to be a felony." A.R.S. § 8-323(B)(1) (Supp. 2003).[5]  Because David was cited under Title 28 for two misdemeanor violations, the Juvenile Division of the Pima County

---

[4]    Excluded from the definition of "delinquent act" are offenses listed in A.R.S. § 13-501(A) and (B), which include such offenses as first and second degree murder, sexual assault, and other serious offenses.  A.R.S. § 8-201(10).

[5]    The other offenses listed in A.R.S. § 8-323(B) consist of the following: purchase of alcohol; boating or game and fish violations; curfew violations; truancy; graffiti offenses; purchase or possession of tobacco; violations of any city ordinance; and "failure to appear related to any offense in this section."  A.R.S. § 8-323(B)(2)-(9).

Superior Court had original jurisdiction to adjudicate these charges.

¶9        Although the juvenile court has original jurisdiction over such citations, the presiding judge of the county may decline jurisdiction over the offenses listed in A.R.S. § 8-323(B).  A.R.S. § 8-202(E).[6]  If such a declination occurs, the presiding judge of the juvenile court has the discretion to appoint juvenile hearing officers, "who may be magistrates or justices of the peace."  A.R.S. § 8-323(A).  Such hearing officers "may hear and determine juvenile pretrial detention hearings" and "process, adjudicate and dispose of all cases that are not classified as felonies and in which a juvenile . . . is charged with violating," among other offenses, "[a]ny provision of title 28 not declared to be a felony."  A.R.S. § 8-323(B)(1) (footnote omitted).

¶10       Effective March 5, 2001, the presiding judge of the Juvenile Division of the Pima County Superior Court declined jurisdiction of all juvenile civil and misdemeanor traffic offenses other than offenses for driving under the influence. Admin. Order No. 2001-01 (Feb. 26, 2001).  In the same order, the presiding judge authorized city magistrates to hear those

---

[6]    This provision allows juveniles to be treated as adults for *civil* traffic violations.  *See* A.R.S. § 8-202(E).  But as discussed later, for *misdemeanor criminal* traffic offenses, the juvenile must be adjudicated under the procedures set forth in A.R.S. § 8-323.

matters. *Id.* The Tucson City Council approved the delegation of this authority to the city magistrates in 2001. Res. No. 18865 (Mar. 26, 2001); *see* A.R.S. § 8-323(A) (requiring the local governing body to "approve the appointment of municipal judges as juvenile hearing officers"). Consequently, the city court judge in this case, sitting as a juvenile court hearing officer, had the authority to hear and adjudicate David's citations.

**B.**

¶11        Delinquency proceedings are governed by the Arizona Rules of Procedure for the Juvenile Court. Ariz. R.P. Juv. Ct. 1(A); *Yavapai County Juvenile Action No. 7707*, 25 Ariz. App. 397, 399, 543 P.2d 1154, 1156 (1975). A proceeding in the juvenile court is generally initiated by the filing of a referral of delinquent conduct that sets forth  1) the facts of the juvenile's alleged acts; 2) the juvenile's name, age, gender, and address; 3) the names and addresses of the juvenile's parent, guardian, or custodian, if known; and 4) if the juvenile is in custody, the place of detention and the date and time the juvenile was taken into custody. Ariz. R.P. Juv. Ct. 22(A). Upon receipt of the referral, the prosecutor has the sole discretion to divert or defer the prosecution to a community based alternative program or to a diversion program. *Id.* R. 22(C). If the prosecutor does not designate the offense

7

for diversion, the referral must be submitted for prosecution. *Id.* R. 22(D). Once the referral of a juvenile who is not in custody has been received by the prosecutor, the prosecutor has forty-five days to file a petition with the court. *Id.* R. 25(B)(2). Notice of the petition and notice to appear before the court must be given in writing to the juvenile and his parent, guardian, or custodian. *Id.* R. 26(A). Attendance at the proceeding is mandatory for the juvenile and his parent, guardian, or custodian.[7] *Id.*

## C.

¶**12** By statute and rule, juvenile proceedings for non-felony offenses may be initiated "by the referral of a uniform Arizona traffic ticket and complaint form," rather than by filing a formal petition. A.R.S. § 8-301(3)(Supp. 2003); *see also* A.R.S. § 8-323(C) (permitting a hearing on any of the offenses listed in A.R.S. § 8-323(B) to "be conducted upon . . . a uniform Arizona traffic ticket"); Ariz. R.P. Juv. Ct. 33(A) (providing for the initiation of juvenile proceedings for non-felony offenses "by the filing of an Arizona Traffic Ticket and Complaint, otherwise known as a citation, in lieu of a petition"). But the Juvenile Rules of Procedure contain no specific rules governing the adjudication of juveniles cited for

---

[7] "Upon a showing of good cause, the court may waive the appearance of the parent, guardian or custodian . . . ." Ariz. R. P. Juv. Ct. 26(A).

violating any of the offenses listed in A.R.S. § 8-323(B).

¶13     The omission of specific procedures in the Juvenile Rules for the adjudication of non-felony offenses was not inadvertent.  As the comment to Rule 33 explains:

> It was the determination of the committee that due to the number of lower courts which process non-felony offenses, statewide procedural rules would not permit individual counties the flexibility needed to dispose of such cases in the most efficient manner possible.  Further, amendments made to A.R.S. [§] 8-323, as reflected in S.B. 1024, have clarified some of the provisions which have been most troublesome for the juvenile courts.

Ariz. R.P. Juv. Ct. 33 cmt.  The question, therefore, is whether a city judge, sitting as a juvenile hearing officer, has the flexibility to apply the Rules of Criminal Procedure to proceedings brought under A.R.S. § 8-323.

¶14     David argues that only the Juvenile Rules of Procedure can be applied.  The State counters that the comment to Rule 33 authorizes the municipal courts to depart from "[s]trict compliance with the dictates of the Rules of Juvenile Procedure," and fill the gap by applying the Rules of Criminal Procedure.  Both parties ignore the procedures described in A.R.S. § 8-323.

### III.

#### A.

¶15     In *State ex rel. Collins v. Seidel*, 142 Ariz. 587,

591, 691 P.2d 678, 682 (1984), we recognized that the legislature may enact procedural rules that supplement, but do not contradict, the rules the court has promulgated. Section 8-323 sets forth the procedures a juvenile hearing officer must follow in adjudicating a juvenile charged with violating any of the offenses listed in A.R.S. § 8-323(B).[8] For several reasons, we conclude that the procedures in § 8-323 reasonably supplement, and do not contradict, the relevant Juvenile Rules of Procedure.

¶16      First, A.R.S. § 8-323(C), mirroring Juvenile Rule 33(A), authorizes the juvenile hearing officer to depart from the formality of the general requirements of referral and petition and may conduct a hearing on an alleged violation based upon "a written notice to appear, including a uniform Arizona traffic ticket and complaint form, that states, at a minimum,

_____

[8]     In his supplemental brief, David contends that because Article 6, Section 5 gives exclusive power to this court to promulgate procedural rules, application of any procedural scheme other than the Rules of Juvenile Procedure violates Article 6 and the separation of powers provision of the constitution, Article 3.  David did not raise this argument below, nor in his petition for review.  Therefore, the argument is waived.  *State v. Detrich*, 188 Ariz. 57, 64, 932 P.2d 1328, 1335 (1997) (Defendant waived issue "by failing to sufficiently argue this claim on appeal."); *State v. Nirschel*, 155 Ariz. 206, 208, 745 P.2d 953, 955 (1987) ("Failure to argue a claim constitutes abandonment and waiver of that issue." (citing *State v. McCall,* 139 Ariz. 147, 163, 677 P.2d 920, 936 (1983))). Nevertheless, as we explain, the procedures outlined in A.R.S. § 8-232 do not conflict with the Juvenile Rules of Procedure.

10

the name and address of the juvenile, the offense charged and the time and place the juvenile shall appear in court."  Second, A.R.S. § 8-323(D), paralleling Rule 26(A), provides that the matter may not proceed to disposition unless a parent, guardian, or custodian appears with the juvenile at the time of the disposition.[9]  Third, a juvenile has the right to appeal to the juvenile court from an order of a juvenile hearing officer.  A.R.S. § 8-325 (1999).  This procedure comports with that set forth in Rules 88 and 89 governing juvenile appellate procedure.

¶17      In addition, and perhaps most importantly, A.R.S. § 8-323(F) limits the sanctions the hearing officer may impose.  For example, the hearing officer may not impose jail time.  Instead, the hearing officer may do any of the following: place the juvenile on unsupervised probation, § 8-323(F)(1); transfer the citation to the juvenile court for further proceedings, § 8-323(F)(2); suspend or restrict the juvenile's driving privileges, § 8-323(F)(3); order the juvenile to attend traffic school or counseling, § 8-323(F)(4); order the juvenile to pay a monetary assessment or penalty, § 8-323(F)(5); order the juvenile to perform community service, § 8-323(F)(6); order the juvenile to pay restitution, § 8-323(F)(9); or reprimand the

---

[9]    But "[u]pon a showing of good cause that the parent, guardian or custodian cannot appear on the date and time set by the court, the court may waive the requirement that the parent, guardian or custodian appear."  A.R.S § 8-323(D).

juvenile and take no further action, § 8-323(F)(11). Moreover, in Pima County, once the proceeding has concluded, the hearing officer must forward copies of all citations along with his findings and disposition to the juvenile court for review. Admin. Order No. 2001-01 (Feb. 26, 2001). Because all possible sanctions fall short of incarceration, we conclude that strict application of the Juvenile Rules of Procedure, as argued by David, is not required.

¶18 Instead, the procedures in § 8-323 provide the flexibility recommended in the comment to Juvenile Rule 33, yet still afford a juvenile procedural due process similar to that provided by the Juvenile Rules of Procedure.

**B.**

¶19 Contrary to the State's position, the Arizona Rules of Criminal Procedure apply only to "*criminal proceedings* in all courts within the State of Arizona." Ariz. R. Crim. P. 1.1 (emphasis added). Because David is a juvenile, the allegations against him are not criminal offenses. *See* A.R.S. § 8-201(10) (defining criminal offenses committed by juveniles as "delinquent acts"). Furthermore, an adjudication of delinquency is not deemed a criminal conviction and does not impose any civil disabilities ordinarily resulting from a criminal conviction. A.R.S. § 8-207(A) (Supp. 2003). Therefore, the application of the Rules of Criminal Procedure to a juvenile's

12

adjudication in a proceeding brought under A.R.S. § 8-323(B) conflicts with the plain language of Rule 1.1. Thus, to the extent the city court applied the Rules of Criminal Procedure, it erred.

## IV.

¶20 Nevertheless, the State maintains that application of the Rules of Criminal Procedure did not violate David's due process rights in this case. In fact, the State argues that affording David a jury trial gives him more procedural due process than do the procedures in A.R.S. § 8-323 or the Rules of Juvenile Procedure. This argument overlooks the policies underlying the juvenile justice system.

## A.

¶21 From the inception of the juvenile justice system, courts have recognized that juvenile cases involved special interests that could not be adequately addressed by the adult criminal system. *In re Gault*, 387 U.S. 1, 15 (1967) (noting that the early reformers of the juvenile system were "profoundly convinced that society's duty to the child could not be confined by the concept of justice alone"). The juvenile was seen as essentially good and the idea of crime and punishment was abandoned. *Id*. The primary function of juvenile courts is treatment and rehabilitation. *Id.* at 15-16 ("The child was to be 'treated' and 'rehabilitated' and the procedures, from

13

apprehension through institutionalization, were to be 'clinical' rather than punitive."). In contrast, the public policy of Arizona's Criminal Code is "to condemn, correct, or deter transgressions which harm either individual or public interests." *State v. Bly*, 127 Ariz. 370, 371, 621 P.2d 279, 280 (1980) (citing A.R.S. § 13-101). In addition, rehabilitation is not an express sentencing policy of our criminal code; rather the policy is "[t]o impose just and deserved punishment on those whose conduct threatens the public peace." *Id*. at 372, 621 P.2d at 281 (quoting A.R.S. § 13-101(6)).

¶22    In an attempt to further the goals of treatment and rehabilitation of juveniles, courts in the past kept juvenile proceedings less formal and initially forsook the "rigidities, technicalities, and harshness" of the substantive and procedural criminal law. *Gault,* 387 U.S. at 15. Such informal proceedings, however, were ultimately found to violate the juvenile's right to due process. *Id*. at 19 ("Unfortunately, loose procedures, high-handed methods and crowded court calendars, either singly or in combination, all too often have resulted in depriving some juveniles of fundamental rights that have resulted in a denial of due process." (quoting Paul S. Lehman, *A Juvenile's Right to Counsel in a Delinquency Hearing*, 17 Juv. Ct. Judges J. 53, 54 (1966))).

¶23     Consequently, the United States Supreme Court held that the Due Process Clause applies to juvenile proceedings. *Schall v. Martin*, 467 U.S. 253, 263 (1984) (holding that "certain basic constitutional protections enjoyed by adults accused of crimes also apply to juveniles"). A juvenile is entitled, among other things, to notice of the charges, *see Gault*, 387 U.S. at 31-34; right to counsel,[10] *see id.* at 34-42; privilege against self-incrimination, *see id.* at 42-57; right to confrontation, *see id.* at 56-57; cross-examination, *see id.*; proof beyond a reasonable doubt, *see In re Winship*, 397 U.S. 358, 368 (1970); and protection against double jeopardy, *see Breed v. Jones*, 421 U.S. 519, 527-28 (1975). The Court did not hold, however, that a juvenile charged with criminal conduct must be treated in the same manner as a similarly situated adult. Instead, the Court stated that "the Constitution does not mandate elimination of all differences in the treatment of juveniles." *Schall*, 467 U.S. at 263. Rather, the Court noted, "[t]he State has 'a *parens patriae* interest in preserving and

---

[10]    If the proceedings will not result in the commitment of the juvenile to custody, the constitution does not require appointment of counsel. *Gault*, 387 U.S. at 41 ("We conclude that the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency *which may result in commitment to an institution in which the juvenile's freedom is curtailed*, the child and his parents must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child.") (emphasis added).

promoting the welfare of the child,' which makes a juvenile proceeding fundamentally different from an adult criminal trial." *Id.* (quoting *Santosky v. Kramer*, 455 U.S. 745, 766 (1982)).

¶24 Thus, certain constitutional protections afforded adults are not guaranteed to juveniles. For example, a juvenile is not guaranteed the right to a trial by jury. *McKeiver v. Pennsylvania*, 403 U.S. 528, 545 (1971); *see also* Ariz. R.P. Juv. Ct. 6 (Juvenile proceedings are to be conducted informally "in a manner similar to the trial of a civil action before the court sitting without a jury."). The task of the juvenile court, therefore, is "to strike a balance — to respect the 'informality' and 'flexibility' that characterize juvenile proceedings, and yet to ensure that such proceedings comport with the 'fundamental fairness' demanded by the Due Process Clause." *Schall*, 467 U.S. at 263 (citing *Breed*, 421 U.S. at 531, *McKeiver*, 403 U.S. at 543, and *Winship*, 397 U.S. at 366).

**B.**

¶25 We conclude that the substantive and procedural structure of A.R.S. § 8-323 appropriately safeguards due process rights, yet allows the flexibility necessary to promote the policies of the juvenile justice system. As discussed above, a juvenile hearing officer must notify the juvenile's parent or guardian before disposition. A.R.S. § 8-323(D). And the

16

hearing officer has limited discretion as to what sanctions may be imposed. *See* A.R.S. § 8-323(F)(1)-(11). Finally, a determination that the juvenile committed a delinquent act is not considered to be a criminal conviction. *See* A.R.S. § 8-207(A) (Adjudication of delinquency by the juvenile court will "not be deemed a conviction of crime, impose any civil disabilities ordinarily resulting from a conviction or operate to disqualify the juvenile in any civil service application or appointment.").

¶26    Consequently, we disagree with the State's assertion that a jury trial provides more protection for the due process rights of the juvenile than does an adjudication before a judge. Forcing a juvenile to be tried by a jury for the offenses for which David was cited does not promote the informality and flexibility that the juvenile courts strive to achieve and subjects the juvenile to the very stigma the legislature sought to prevent.

¶27    We therefore hold that a city court judge, sitting as a juvenile hearing officer, cannot apply the Rules of Criminal Procedure and order a jury trial, but must instead apply the procedures of A.R.S § 8-323.

**V.**

¶28    The ultimate resolution of this matter will depend upon the status of David's case. If he has been tried and

17

convicted as an adult, the city court judge must vacate the convictions without prejudice.  On the other hand, if the matter is still pending, the judge must process the matter under the procedures set forth in A.R.S. § 8-323.  We therefore remand this matter to the city court for further proceedings consistent with this opinion.

 

                           _____
                           Michael D. Ryan, Justice


CONCURRING:


_____
Charles E. Jones, Chief Justice


_____
Ruth V. McGregor, Vice Chief Justice


_____
Rebecca White Berch, Justice


_____
Andrew D. Hurwitz, Justice

18